## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| LARRY RANDALL POWELL, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:06-CV-1960-O |
| | § | ECF |
| THE DALLAS MORNING NEWS LP, | § | |
| et al., | § | |
| | § | |
| Defendants. | § | |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

This case arises from a reduction in force in which Defendants The Dallas Morning News, Inc., and/or Belo Corp., terminated Plaintiffs' employment. Before the Court for findings, conclusions, and recommendation is Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint ("Motion") (doc. 134), filed on August 20, 2008. At issue is: (1) whether Plaintiffs' Second Amended Complaint ("Complaint") states cognizable breach of fiduciary duty and fraud claims; and (2) whether the fraud claims should be dismissed for failure to comply with Federal Rule of Civil Procedure Rule 9(b).

## I. BACKGROUND[1]

### A.     Factual Background

Although the District Court set forth the factual background for this case in its June 28, 2007

---

[1]All background facts are gleaned from the Second Amended Complaint which the Court refers to as the "Complaint" except when necessary to distinguish it from the Complaint previously considered by the District Court in connection with a Motion to Dismiss.

Memorandum Order ("Order") (doc. 30), this Court will repeat the facts for the sake of clarity. Plaintiffs Larry Randall Powell, Lawrence William DeOre, Paula F. Watson, Gary Van West, Raul Prezas Reyes, Timothy Arthur O'Leary, Jan Michael Hubbard, Michael S. Coons, John Paul Chamless, Ira Hadnot Alexander, Deborah Sue Voorhees, Linston Robert Lofley, Karen Patterson, Linda Jones, Gary Stratton, Ewina H. Schumacher, Paulette Ladach, and Steven Wayne Yount (collectively, "Plaintiffs") are all former employees of The Dallas Morning News L.P. (The "News" or "TDMN") or Belo Corp. ("Belo") (collectively, "Belo Defendants").  Plaintiffs were all over age 40—most were over age 50—when they were let go by the Belo Defendants as part of a reduction in force ("RIF") in 2004.  (Complaint ¶ 16.)  Plaintiffs now bring several claims arising from the termination of their employment against the Belo Defendants, the G.B. Dealey Retirement Pension Plan (the "Pension Plan"), the Belo Savings Plan (the "Savings Plan"), the Belo Benefits Administrative Committee[2] (the "Committee"), Robert W. Decherd ("Decherd"), and James M. Moroney III ("Moroney").

### Retirement Benefits

In 2000, Defendant Belo decided to modify the retirement benefits offered to its employees, limiting the number of active participants in the Pension Plan in an effort to reduce "burdensome pension administrative expenses."  (*Id.* ¶ 21, 23.)  At that time, fourteen of the eighteen Plaintiffs were eligible to accrue benefits under the Pension Plan.[3]  (*Id.* ¶ 20.)  Belo notified its employees that

---

[2]The Belo Benefits Administrative Committee is the plan administrator for both the Pension Plan and the Savings Plan.

[3]Those fourteen plaintiffs are: Powell, DeOre, Watson, Reyes, O'Leary, Coons, Chamless, Alexander, Voorhees, Lofley, Jones, Stratton, Schumacher, and Yount (collectively, "Plaintiff Pension Plan Participants"). (Compl. ¶ 20)

all employees hired after June 30, 2000 would not be able to participate in the Pension Plan[4] and that all current participants would have to inform the company in writing whether they wished to remain an Active Participant in the Pension Plan. (*Id.* ¶ 21.) Employees who opted out of the Pension Plan became eligible to participate in an enhanced 401(k) plan under the Savings Plan, with greater employer contributions than the classic 401(k) plan. (*Id.*) Employees who declined to opt out of the Pension Plan would continue to accrue pension benefits until they terminated their employment with the company and would remain eligible to participate in the classic 401(k) plan under the Savings Plan, receiving a lesser amount of matching benefits. (*Id.*) Belo explained to its employees that the Pension Plan was more beneficial to employees with a greater number of years of service. (*Id.* ¶ 23.)

Belo's Pension Plan awards employees who retire at age 65 or older benefits calculated based upon years of service and final monthly compensation. (*Id.* ¶ 22.) Employees who retire between ages 55 and 64 may receive early retirement benefits determined based upon their date of retirement. (*Id.*) For those employees who choose to retire early, their benefits are reduced by a stated percentage for each month before their 65th birthday that they retire. (*Id.*) According to Plaintiffs, benefit values accelerate between ages 55 and 65. (*Id.*)

As to Belo's Savings Plan, "most of Belo's matching contributions to the classic 401(k) plan and all to the enhanced 401(k) were invested automatically in Belo series B common stock." (*Id.* ¶ 23.) Belo permitted employees age 55 and over to transfer the value of the stock. (*Id.*) This value

---

[4]Certain union employees of *The Providence Journal*, another Belo publication, were excepted from this policy. (*Id.* ¶ 21) On August 1, 2004, Belo amended the Pension Plan to exclude from eligibility to participate all new employees of *The Providence Journal*. (*Id.* ¶ 25) Plaintiffs insist that Belo should have notified them of this amendment.

was, of course, affected by Belo's performance. (*Id.*)

In January 2003, Defendant Decherd, President and CEO of Belo Corp., received a letter from a circulation contractor, explaining that TDMN's circulation numbers were being overstated.[5] (*Id.* ¶ 25.) Belo investigated this report and cleared itself but did not announce the reports of circulation fraud or the findings of the investigation to anyone. (*Id.*) Despite the report of circulation fraud, Belo continued to contribute its own stock to employees' Savings Plan accounts. (*Id.*)

In June 2004, Decherd directed senior management at Belo's various publications to examine their circulation practices. (*Id.* ¶ 24.) He received reports of questionable circulation practices at TDMN and ordered a "stepped-up investigation." (*Id.*) Decherd publicly disclosed the circulation fraud on August 5, 2004, and Plaintiffs allege that this announcement had an immediate effect on Belo stock prices. (*Id.* ¶¶ 18, 24.) Four days later, Decherd wrote a memo about the circulation fraud to "Belo colleagues." (*Id.* ¶ 24.) He explained that Belo was changing its circulation practices and planned on reimbursing advertisers for any overcharge. (*Id.*) Decherd also acknowledged employees' concerns about the effect of the circulation fraud on stock prices. (*Id.*)

On September 29, 2004, Belo issued a press release announcing that the investigation of the circulation overstatement had revealed that the overstatement was caused by "an aggressive pursuit of circulation goals by former senior circulation managers." (*Id.* ¶ 26.) Belo further advised that there was no evidence of impropriety of current senior executives and that it had a "strategy for the future" to address investors' concerns about its stock value, including a reduction in force. (*Id.*)

---

[5]Circulation numbers are used to determine the cost of advertising in a Belo publication.

4

*Termination and Severance*

Plaintiffs contend that the Belo Defendants began to target older employees in 1998 when representatives of both entities publicly announced concerns about the "graying" of TDMN's newsroom.[6]  (*Id.* ¶ 31.)  In 2002, TDMN hired a new Editorial Department manager to "rejuvenate" the department.  (*Id.* ¶ 32.)  Keven Willey replaced a woman who was over age 50 and more than ten years older than Ms. Willey.  (*Id.*)  During the two years immediately prior to the RIF, TDMN replaced other older newsroom department heads with younger managers.  (*Id.* ¶ 35.)  During this time, Moroney, publisher and CEO of TDMN, and Robert Mong ("Mong"), TDMN's managing editor, gave speeches to employees about the "Newspaper of the Future" and began to make changes at TDMN.  (*Id.* ¶ 33.)  TDMN began to target wealthy Collin County readers through their newspaper, Hispanic readers through a new publication, *Al Dia*, and readers under age 40 through Dallasnews.com and *Quick*, a free publication.  (*Id.* ¶ 34.)  Many of the newsroom employees under age 40 were assigned to work for Dallasnews.com and *Quick*.  (*Id.* ¶ 37.)  During this time of transition, Moroney and Mong made speeches asking employees to be flexible and to be willing to assume multiple roles.  (*Id.* ¶ 36.)  Plaintiffs assert that younger managers made derogatory comments about them based on their ages and that they were targeted in performance reviews by younger managers as TDMN "began to focus on hiring younger writers, editors and artists."  (*Id.* ¶ 38.)  Plaintiffs further contend that older employees were stereotyped as inflexible and unable to adapt to new technology or to assume multiple job responsibilities, difficult to work with, and unlikely to accept the changes associated with the "Newspaper of the Future."  (*Id.* ¶ 39.)

---

[6]All Plaintiffs except Schumacher and Ladach worked in the newsroom department as writers, editors, or artists.  (Compl. ¶¶ 14-15.)

On October 27, 2004, Defendants terminated many TDMN employees, including Plaintiffs, in a reduction in force. (*Id.* ¶ 16.) Plaintiffs maintain that the Belo Defendants did not provide managers with any objective criteria to guide their selection of employees to be terminated in the RIF. (*Id.* ¶ 40.) Instead, Plaintiffs allege that "Defendants transferred certain employees to new positions or assigned new job duties to ensure 'safe' or 'unsafe' positions." (*Id.*) Plaintiffs assert that the Belo Defendants hired new employees under the age of 45 to fill many positions and assume the job duties of older employees whose jobs had been eliminated in the RIF. (*Id.* ¶ 41.) Plaintiffs also insist that the Belo Defendants gave inconsistent reasons for their termination in the RIF—first, Defendants explained that terminations were solely based on the elimination of positions, but later Defendants stated that some of the terminations were based on merit. (*Id.* ¶ 43.)

Prior to the RIF, the Belo Defendants assured TDMN employees that anyone whose position was eliminated in the RIF would receive a severance payment equal to one week's salary for each "year of service" to Belo.[7] (*Id.* ¶ 27.) Plaintiff Hubbard complains that he was not paid severance based on his total years of service.[8] (*Id.* ¶ 29.) Plaintiffs also contend that Belo failed to provide them written information regarding the severance "plan," even after some of them requested such information. (*Id.* ¶ 30.)

---

[7]Plaintiffs inform the Court that the Savings Plan and Pension Plan define "year of service" to include "a total of the years each employee was employed by Belo or one of its subsidiaries, even if the service had not been continuous." (Compl. ¶ 28.)

[8]While Plaintiff Hubbard does not provide specific details of his employment with the Belo Defendants, the complaint suggests that Hubbard worked for Belo at some time in the past, left for a period of time, and then returned. Apparently, Hubbard was paid severance based upon his most recent period of employment with the Belo Defendants and not for any previous periods of employment.

## B. Procedural Background

On October 24, 2006, Plaintiffs filed suit against Defendants, alleging claims under the Employee Retirement Income Security Act ("ERISA"), the Age Discrimination in Employment Act ("ADEA"), and state common law. Defendants responded by moving to dismiss all of Plaintiffs' claims, at least as to several of the Defendants. On June 28, 2007, the Court granted Defendants' motion in part, dismissing the following claims: interference with Pension Plan benefits only as to the Pension Plan; breach of fiduciary duty to disclose circulation overstatements; breach of fiduciary duty for failure to disclose 2003 delinquent Savings Plan contributions; failure to provide severance plan information; wrongful denial of severance plan benefits to Plaintiff Hubbard; disparate impact based upon the policy of replacing managers over age 50 with younger employees and creating an environment in which managers conveyed negative, age-based sentiments to older employees; and Plaintiff Hubbard's quantum meruit claim. The Court permitted Plaintiff Hubbard to amend his conspiracy to defraud claim to include all required elements.

Plaintiffs amended their complaint to correct the pleading of the fraud claims, but they also amended other claims appearing in the complaint and re-urged claims already dismissed by the Court. Defendants then filed a Motion to Dismiss Plaintiffs' First Amended Complaint or Alternatively to Consolidate Fraud Claims (doc. 39). To simplify the proceeding, the District Court required Plaintiffs to remove from their complaint all claims previously dismissed by the Court. Accordingly, the Plaintiffs filed the Second Amended Complaint on September 25, 2007 (doc. 53). Both parties filed numerous briefs, appendices, supplemental briefs, and letter supplements. This Court ordered that the Motion to Dismiss the First Amended Complaint be dismissed without prejudice and ordered a new briefing schedule should Defendants elect to file a motion to dismiss

the Complaint. Defendants filed the Motion to Dismiss Second Amended Complaint which is now ripe for consideration. The Court now turns to the Legal Standard that governs the Motion.

## II. LEGAL STANDARD

Motions to dismiss based upon Rule 12(b)(6) are disfavored and should be granted only infrequently. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). When determining whether dismissal is proper under Rule 12(b)(6), courts must take as true all facts pleaded in the complaint and must liberally construe the complaint in favor of the plaintiff. *Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1986). Further, in order to survive a 12(b)(6) motion to dismiss, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true, even if doubtful in fact." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007) (internal citations omitted). Moreover, although plaintiff is not required to provide detailed factual allegations, the complaint must go beyond "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* With this standard in mind, the Court turns to the parties' arguments.

## III. ANALYSIS

### A.    Initial Considerations

*Amendments Exceed the Intended Scope of the District Court's Leave to Amend*

Initially, the Court notes that Plaintiffs' amendments exceeded the intended scope of the Court's permission to amend the complaint. The District Court dismissed all claims in Count Two except Plaintiffs' claims that the News, Belo, and the Committee: (1) continued to offer Belo stock as an investment option to Savings Plan participants despite knowledge of circulation

overstatements; and (2) failed to disclose a 2004 Pension Plan Amendment. Additionally, the District Court allowed Plaintiffs to amend their fraud claims so that they would comply with Federal Rule of Civil Procedure 9(b). Nevertheless, a party may amend its complaint once as a matter of course if a responsive pleading has not been served. Fed. R. Civ. P. 15(a). Because the Fifth Circuit does not classify a Rule 12(b)(6) motion to dismiss as a responsive pleading for the purposes of amendment under Rule 15, Plaintiffs' addition of claims was permissible and those claims will remain before the Court, to the extent that they are not claims that the District Court dismissed with prejudice. *See McKinney v. Irving Indep. Sch. Dist.*, 309 F.3d 308, 315 (5th Cir. 2002).

*Claims or Factual Allegations*

Defendants and Plaintiffs disagree about which of Plaintiffs' allegations constitute claims and which are intended to be construed only as facts alleged in support of Plaintiffs' claims. Paragraph 53 of Plaintiffs' Complaint provides under "**IV. Claims:**"

> **Count Two: Additional ERISA Violations**
>
> **(Against Defendants Morning News L.P., Belo, and the Committee)**
>
> 53. Defendants Belo and Morning News L.P., acting singly and in concert with Defendants Decherd, Moroney and the Committee, continued to contribute Belo stock, or to cause it to be contributed, to fund a portion of the company's obligations to the Belo Savings Plan, an employee benefit plan subject to ERISA, in which Plaintiffs were participants and beneficiaries, but failed to contribute cash in lieu of Belo stock, to amend the Plan or to request its amendment, although authorized to do so, to require contributions other than Belo stock while withholding information known by Defendants in 2003 that:
>
> > (a) [The substantive allegations of this sub-paragraph have been deleted in accordance with the Court's June 28, 2007 Memorandum Order.]
> >
> > (b) in January 2003 significant circulation

9

"overstatements" had been reported to one or more of the Defendants by knowledgeable employees in the DMN Circulation Department;

(c) Belo would have potential liability to employees, advertisers, investors, lenders and Belo shareholders if its circulation numbers had been overstated, regardless of the cause of the misstatement;

(d) the overstatements directly and significantly affected Belo's revenue and would impact revenue in 2003, 2004 and beyond;

(e) Belo's stock value would be adversely affected due to announcements of significant revenue overstatements and significant refunds to advertisers and shareholders and liability incurred due to the overstatements;

(f) the overstatements were significant as to DMN's circulation; in 2003, the group of newspapers owned by Belo generated approximately 52 percent of Belo's revenues; within that group, DMN generated approximately 60 percent of revenues;

(g) any decline in Belo's stock value due to Belo's conduct would decrease the value of the employees' benefits under the Belo Savings Plan.

Complaint ¶ 53.

The Court agrees with Defendants' contentions that these allegations appear in the Complaint as "Additional ERISA Violations." (Compl. at 15.) However, Plaintiffs stipulate in their "Response to Defendants' Motion to Dismiss Second Amended Complaint" ("Response") that they are not seeking relief based on allegations that Defendants breached a fiduciary duty by accepting Belo contributions of stock, retaining the Belo stock fund as an investment option, investing in or purchasing Belo stock, failing to disobey the terms of the Savings Plan, and failing to sell Belo stock.

(Resp. at 6.)  The Court accepts this stipulation and finds that the District Court should strike the allegations insofar as they are set out as claims of additional ERISA violations.  Plaintiffs also stipulate that because the District Court previously concluded that Decherd and Moroney were not acting as ERISA fiduciaries, as pled in Plaintiffs' initial Complaint, they are not attempting to re-urge a claim for breach of fiduciary duty against Decherd or Moroney.   Moreover, Plaintiffs acknowledge that the District Court previously concluded that ERISA did not impose on Defendants an independent duty to disclose the circulation overstatements in a more timely manner.  Plaintiffs stipulate that they do not reassert such a duty under ERISA.[9]

### The 2003 Savings Plan SPD ("2003 SPD") and Statements in Plaintiffs' Response

When a court rules on a 12(b)(6) motion, the court is limited to the actual contents of the pleadings and the documents either attached or incorporated by reference into a complaint.  *See Collins v. Morgan Stanley*, 224 F.3d 496, 498 (5th Cir. 2000).[10]  The Court may consider documents attached to a motion to dismiss under rule 12(b)(6), provided they are referred to by the complaint and are integral and central to the plaintiff's claim.[11]  *Id*. at 498-499.  Here, Plaintiffs attach the 2003 SPD  to the Response to the motion to dismiss.  The 2003 SPD is not attached to the complaint or

---

[9]Plaintiffs state, "[t]he Court left open the question of the fiduciary status of TDMN, Belo and the Committee in other contexts. To the extent Defendants did not act as ERISA fiduciaries, the conduct alleged in Count Two gives rise, in part, to Plaintiffs' fraud claim in Count Five."

[10]An exception which is not applicable here is set out in *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1018 (5th Cir. 1996).

[11]Plaintiffs cite this case for the proposition that a court may consider a plaintiffs' attachment to a response to a motion to dismiss to be incorporated into the complaint.  The case does not support Plaintiffs' argument. Defendants had no notice that Plaintiffs relied upon the document in framing the Complaint.  At this stage of the proceedings where notice has not been given, the Court declines to convert the motion to dismiss into a motion for summary judgment under Rule 56.

to the motion to dismiss, and the Complaint contains no references to any SPD, much less references which are integral and central to Plaintiffs' claims. Further, Plaintiffs allege in the Response, but not in the complaint, that "the Committee failed to investigate before making the misrepresentations at issue," the Committee "failed to correct the misstatements," and "the Committee members acted in concert with one another and with the other Defendants in making the misrepresentations at issue." (Resp. at 6.) Defendants argue that the Court should neither consider the 2003 SPD nor take the statements in the Response to be allegations in the Complaint. (Reply at 3.) Defendants' position is well taken. The Court will not consider the 2003 SPD attached to the Response nor the statements in the Response to be incorporated into Plaintiffs' Complaint.

Similarly, Plaintiffs direct the Court to matters outside the pleadings in connection with their conspiracy to defraud allegations. Plaintiffs request that the Court consider Judge Fitzwater's decision in *Fener v. Belo Corp.*, Civ. Action No. 3:04-CV-1836-D ("*Fener*") to satisfy the requirement of Rule 9(b) to state fraud with particularity. (Resp. at 20-21.) Rule 9(b) provides that "the circumstances constituting fraud or mistake shall be stated with particularity." FED. R. CIV. P. 9(b). Whether the facts alleged in *Fener* are sufficient to state a claim for securities fraud does not govern the Court's determination of the Motion in this case.

### B. ERISA Violations: Breach of Fiduciary Duty for Failure to Disclose Material Information

Defendants argue that Count Two of the Complaint states no cognizable breach of fiduciary duty claim. Plaintiffs claim that they have pled that Defendants, acting singly and in concert, violated ERISA by intentionally or recklessly making false and misleading statements about the value and security of Savings Plan benefits–in the form of Belo stock and revenue–which induced Plaintiffs to invest in and retain that stock in their accounts. (Resp. at 3.) Plaintiffs' allegations

regarding breach of fiduciary duty are set forth in ¶¶ 57- 59 of the Complaint:

57. Decherd as chairman of the Belo Board of Directors appointed key members of the Committee, who in turn appointed the remaining members of the Committee; many were Belo principals and officers who reported to Decherd; the Committee members failed to conduct an independent investigation or analysis of Belo's, Decherd's or Moroney's conduct in significantly overstating Belo revenue in 2003 and 2004; and failed to take action against Belo to recover losses to the value of the Plan benefits due to Belo's conduct.

58. Defendants Decherd, Moroney and members of the Committee, who also acted as principals of Belo, knew or should have known that the artificially inflated circulation numbers would cause artificial inflation of Belo's financial results, because those results were derived, in large part, from the circulation results of DMN; regardless of this knowledge, Decherd, acting with Moroney, issued public statements listing DMN's circulation and public financial statements containing artificially inflated financial results; he thus was severely reckless in disregarding that DMN, and therefore Belo, was recognizing revenue it had not earned.

59. To the extent Defendants Morning News L.P., Belo, and the Committee acted as ERISA benefit plan sponsors, administrators or fiduciaries, they breached their fiduciary duties or otherwise violated ERISA as follows:

(a) by wrongfully denying Plaintiffs and other Belo Pension Plan and Savings Plan participants the benefits and information to which they are entitled under ERISA during and following their employment with Defendants Morning News L.P. and Belo;

* * *

(c) by failing to disclose to Pension and Savings Plan participants the August 1, 2004 amendment to the Plans;

(d) by knowingly making false or misleading statements about Belo revenue, while withholding damaging information about circulation fraud, with knowledge that the circulation fraud and its announcement would negatively impact Belo stock values while continuing to fund participants' employee-benefit accounts with Belo stock and while allowing the

circulation fraud to continue;

(e) by failing to provide Plaintiffs with adequate information to determine or protect their rights to benefits;

(f) by causing Plaintiffs to lose benefits and rights, or suffer delay of rights, as a result of the false or misleading statements and denial or omission of information required under ERISA;

(g) by making false or misleading statements to Plaintiffs and the public, including in SEC filings, investor conferences and reports, about circulation information for DMN, which directly affected Belo revenues and the value of Belo stock, thus the value of the benefits to which Plaintiffs would be or were entitled, and the security of those benefits; and

(h) by inducing Plaintiffs and other Belo employees to elect to participate in the Belo Savings Plan, to retain Belo stock in their Savings Plan accounts and to otherwise purchase Belo stock, although Defendants had superior knowledge of the manipulation of revenue and thus the manipulation of stock values, which they failed to disclose while making false and misleading statements about Belo circulation numbers and revenue.

Complaint ¶¶ 57- 59. The Court finds it instructive to revisit the Order:

The Court cannot glean a broad requirement that ERISA fiduciaries disclose to plan participants any information about an employer that could have a negative effect on the value of the employer's stock when the participants hold said stock under an ERISA plan. Furthermore, such a duty would place too high a burden on employers to continually update plan participants and the public[12]

---

[12]  The District Court noted in a footnote that "Judge Harmon's opinion in *In re Enron Corporation Securities, Derivative & ERISA Litigation* provides an excellent explanation of how such a disclosure relates to insider trading laws.  *In re Enron*, 284 F. Supp. 2d at 563-66 (S.D. Tex. 2003).  However, the case at bar is distinct from *Enron* in that *Enron* involved substantial depletion of a retirement plan's assets and the instant case involves a relatively minor drop in stock price."

about myriad situations within the company which could negatively affect the value of the employer's stock. *See Herrington v. Household Int'l, Inc.*, 2004 WL 719355, at *8 (N.D. Ill. Mar. 31, 2004) (noting that such a disclosure standard "would require defendants to continuously gather and disclose nonpublic information bearing some relation to the plan sponsor's financial condition"). For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss as to Plaintiffs' claim that Defendants breached their fiduciary duty by failing to disclose the circulation overstatements in a more timely manner. Although Plaintiffs advance a related breach of fiduciary duty claim—that Defendants continued to offer Belo stock as an investment option to Savings Plan participants despite knowledge of circulation overstatements—this issue of its dismissal is not briefed in sufficient detail, and the Court declines to address it at this stage of the case.

Order at 9-14 [doc. 30]. As stated previously, the District Court dismissed all claims in Count Two except Plaintiffs' claims that the News, Belo, and the Committee: (1) continued to offer Belo stock as an investment option to Savings Plan participants despite knowledge of circulation overstatements; and (2) failed to disclose a 2004 Pension Plan Amendment. Plaintiffs have stipulated that they are not claiming that retaining the Belo stock fund as an investment option violated ERISA. Rather, they are now claiming that Defendants violated ERISA by intentionally or recklessly making false and misleading statements about the value and security of Savings Plan benefits–in the form of Belo stock and revenue–which induced Plaintiffs to invest in and retain that stock in their accounts. (Resp. at 3.)

### Breach of Fiduciary Duty by the Committee

Congress enacted ERISA to protect employees' rights to benefits while also encouraging employers to develop employee benefits programs. *See Martinez v. Schlumberger, Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003)(citing Edward E. Bintz, *Fiduciary Responsibility Under ERISA: Is There Ever a Fiduciary Duty to Disclose?,* 54 U.Pitt.L.Rev. 979, 979 (1993)). Under the statutory scheme,

plan fiduciaries have a number of detailed duties and responsibilities, which include the proper management, administration, and investment of plan assets, the maintenance of proper records, the disclosure of specific information, and the avoidance of conflicts of interest. *Laborers National Pension Fund v. Northern Trust Quantitative Advisors, Inc.*, 173 F.3d 313, 317 (5th Cir.). *See also Martinez,* 338 F.3d at 411 (ERISA provides specific rules governing fiduciary duties and information that must be provided to participants as well as to government agencies.).

To establish a claimed breach of fiduciary duty, an ERISA plaintiff must prove a breach of a fiduciary duty and a prima facie case of loss to the plan. "Once the plaintiff has satisfied these burdens, the burden of persuasion shifts to the fiduciary to prove that the loss was not caused by . . . the breach of duty." *McDonald v. Provident Indem. Life Ins. Co.*, 60 F.3d 234, 237 (5th Cir. 1995) (quoting *Roth v. Sawyer-Cleator Lumber Co.*, 16 F.3d 915, 917 (8th Cir. 1994)).

Even under Rule 12(b)(6)'s liberal pleading standard set, a court may not assume that the plaintiff can prove facts which he has not alleged. *Campbell v. Wells Fargo Bank, N.A.*, 781 F.2d 440, 443 (5th Cir. 1986). Taking the facts most favorably to Plaintiffs, the Complaint consists of only conclusory allegations of breaches of duty by the Committee. Plaintiffs do not allege what benefits and information Plaintiffs were entitled to, when they were entitled to such benefits and information, and what entitled them to such benefits and information. Plaintiffs do not allege what false or misleading statements the Committee made, when they made the statements, or how they knew them to be false. Further, Plaintiffs do not allege any underlying facts regarding the Committee's alleged failure to provide Plaintiffs with adequate information to determine or protect their rights to benefits or how the Committee caused Plaintiffs to lose benefits and rights, or suffer delay of rights. Additionally, Plaintiffs neither name the committee members nor allege what role

any committee member had in preparing SEC or any other documents filed by Belo or the News. Nor do Plaintiffs allege what basis the Committee had for questioning the veracity of any documents.

In sum, Plaintiffs have failed to allege the specifics of what ERISA and the Plan required of the Committee, or any of its members, their duties, or the when, what, and where of their alleged breaches. *See Crowley v. Corning*, 234 F. Supp.2d 222, 230 (W.D. N.Y. 2002). In *Crowley*, the court dismissed a claim of breach of fiduciary duty against an Administrative Committee for failing to investigate company earnings statements under allegations that are very similar to Plaintiffs' allegations. The *Crowley* allegations were blanket allegations against all Defendants, as are those in this case. The *Crowley* plaintiffs failed to specify when the adverse information was available, or known, to Committee members or any single one of them.

Plaintiffs rely heavily on the case of *In re Dynegy, Inc. ERISA Litig.,* 309 F. Supp.2d 861, 883 (S.D. Tex. 2004), in which the court concluded that the act of communicating with plan participants and "encouraging" them to review SEC filings containing misrepresentations and omissions triggered a fiduciary duty on the part of the Committee. However, the Complaint does not allege any facts from which the trier of fact could infer that the Committee or any of its members encouraged plan participants to review or rely on allegedly misleading information in SEC reports, press releases, or ABC reports. The allegations fail to give the Committee or any of its members notice of what they would be required to defend against. The claims against the Committee, unsupported by underlying facts and based entirely on conclusory allegations that are insufficient to state a claim, should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). Accordingly, the Court recommends that the District Court dismiss Count II of the Complaint for failure to state a claim

against the Committee.

### *Breach of Fiduciary Duty by Belo or the News*

Plaintiffs fail to state a claim against Belo or the News for breach of fiduciary duty because they fail to allege either is a fiduciary with respect to a specific duty allegedly breached. Additionally, Plaintiffs' allegations against Belo and the News are confusing at best. Plaintiffs explain in a footnote that they "do not allege ERISA claims against Decherd and Moroney, individually, but assert their fraud claim in Count Five, in part, on the misrepresentations and omissions alleged in Count Two, based on allegations Decherd and Moroney acted on behalf of TDMN and Belo and in concert with the Committee. Plaintiffs do not allege that the documents filed with the SEC and the ABC and any press releases by Defendants were promulgated in connection with the management or administration of the Plan. Plaintiffs have not alleged any facts that would show the fiduciary status of either Belo or the News in connection with the filings and releases. Further, Plaintiffs' additional allegations against Belo and the News are entirely conclusory. Even though Plaintiffs attempt to explain them in the Response, the allegations of the Complaint should be sufficiently clear so that the Defendants know what they are required to defend against. This is not the case here. This Court recommends that the District Court dismiss Count II of the Complaint against Belo and the News.

### *Failure to Disclose Amendments*

The District Court left intact Plaintiffs' claim for failure to disclose 2004 Pension and Savings Plan Amendments. (Mem. Op. & Order at 15.) In the Response-- but not in the Complaint--Plaintiffs indicate they are asserting a fiduciary breach related to a failure to timely disclose the August 2004 Amendments and "other documents required under ERISA." (Resp. at 14.)

Plaintiffs' *ad hoc* attempt to add allegations outside breach of fiduciary duty based on a failure to disclose 2004 Pension and Savings Plan Amendments should not be permitted. This claim should be limited to the District Court pronouncement, and insofar as the allegations go beyond the scope stated by the District Court, those allegations should be dismissed with prejudice.

### C.    Plaintiffs' Conspiracy to Defraud Claims

Defendants contend that Count Five of the Complaint fails to state a cognizable fraud claim because Plaintiffs have failed to satisfy the heightened pleading standards of FED. R. CIV. P. 9(b). Although Plaintiffs were given the opportunity to amend to state fraud with particularity, they have not done so. Instead they attempt to rely on facts which Judge Fitzwater found to be sufficient in *Fener*. (Resp. 20-21.) Count Five of the Complaint should be dismissed for failure to state fraud with particularity.

Defendants also claim that Count Five is preempted by ERISA. Plaintiffs argue that their fraud claim is stated in the alternative, to be considered only if Plaintiffs fail to state an ERISA claim. The Court finds that whether an alternative claim is preempted by ERISA has not been sufficiently briefed for the Court to address Defendants' contention at this time.

### IV.  CONCLUSION

The deadline for the amendment of pleadings has not expired. In light of the Response to the motion to dismiss which indicates that Plaintiffs have as yet unstated underlying facts which may state a claim and an exhibit which they should have attached to and incorporated in their complaint, the Court recommends that the dismissal of Count II and Count V of the Complaint be without prejudice to Plaintiffs' seeking leave to file a Third Amended Complaint which clearly and definitively states the facts, each Defendant's fiduciary status and the legal basis for that status, each

Defendant's duties under ERISA and the Plan, each alleged breach of specific duties, and the specific facts alleged to be fraud committed by each Defendant, as they have attempted to do in the Response, but not in the Complaint. The Court does not condone Plaintiffs' "moving target" approach to the Complaint in which it includes new facts and allegations in a response to a motion to dismiss. Plaintiffs are cautioned to clearly distinguish underlying facts from claims, to refrain from including blanket allegations against Defendants, and to refrain from including allegations dismissed by the District Court in the Order.

## V. RECOMMENDATION

The Court recommends that Defendants' Motion to Dismiss Second Amended Complaint be granted in part and denied in part. The District Court should deny the motion to dismiss Plaintiffs' claim for failure to disclose 2004 Pension and Savings Plan Amendments insofar as they restate the claim that the District Court previously retained and grant it with respect to additional allegations of "other documents." The District Court should dismiss with prejudice Plaintiffs' allegations that Defendants breached a fiduciary duty by accepting Belo contributions of stock, retaining the Belo stock fund as an investment option, investing in or purchasing Belo stock, failing to disclose the terms of the Savings Plan, and failing to sell Belo stock because Plaintiffs have stipulated that they are not seeking relief based on these allegations.

The Court should also dismiss with prejudice any allegations that attempt to re-urge a claim for breach of fiduciary duty against Decherd or Moroney or by imputing claims to Belo or the News based on such breaches. The District Court should dismiss without prejudice the remainder of Count Two of the Complaint for failure to state a claim. Further the District Court should dismiss without prejudice Court Five of the Complaint for failure to state fraud with particularity.

**SO RECOMMENDED, February 19, 2009**.


PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within ten days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).